# EXHIBIT 6

OUTSIDE SALES REPRESENTATIVE AGREEMENT

This Outside Sales Representative Agreement ("Agreement") is made and entered into this 27th day of December, 2018, by and between KORONA CANDLE Inc. having its principal place of business at 3994 Pepperell Way, Dublin, VA 24084 (KORONA) and Burgess Group having a principal place of business at 210 N. Walton Blvd., Suite #24, Bentonville, Arkansas 72712 (BG) The parties hereby agree as follows:

ARTICLE 1.   RECITALS

1.01 KORONA is engaged in the business of selling those certain products as listed on Schedule A hereto, incorporated herein by reference, and as updated from time-to-time (the "Products").

1.02 Sales Representative declares that it possesses the financial and physical resources to promote the sale and use of the Products of KORONA and is desirous of developing demand for and selling the Products as authorized herein. KORONA is desirous of having Sales Representative develop demand for and sell its Products on the terms and conditions set forth herein.

ARTICLE 2.   APPOINTMENT

2.01 KORONA hereby appoints Sales Representative as exclusive sales representative for the sale of the Products within the territory described in Schedule B attached hereto and customers described in Schedule C and incorporated herein. The territory so described, and as may be subsequently enlarged, reduced, or otherwise changed in area with the mutual consent of the parties hereto, is hereinafter referred to as the "Territory." During the continuance of this Agreement, KORONA shall not appoint any other or different person, firm, or corporation to sell the Products in the Territory. Except as KORONA may authorize in writing hereafter, Sales Representative shall not sell any of the Products outside of the Territory.

2.02 Sales Representative shall engage in the following responsibilities:

(a)   Represent KORONA in front of the customers and manage the customer relationships;

(b)   Provide a show room with dimensions of at least 10,000 square feet;

1

BG-WG-0128

    (c)   Provide a monthly sales report including all visiting reports describing the Sales Representative's selling efforts with each Customer;

    (d)   Continuously update lists and contact details of KORONA's customers in a CRM and such CRM to KORONA on request;

    (e)   Ensure all data received is protected and is stored in a secured manner not available to any unauthorized person; and

    (f)   Comply with all of KORONA's and KORONA's customer's policies, procedures, and professional codes of conduct.

2.03 Sales Representative shall not accept payments from customers in any form for sales obtained by Sales Representative from customers.

## ARTICLE 3.   COMPENSATION

3.01 KORONA shall pay to Sales Representative BG as compensation for its services, a commission of ▮▮▮▮▮▮▮ on all Walmart net invoiced sales over the annual sales baseline ▮▮▮▮▮▮▮▮▮▮ KORONA shall also pay ▮▮▮▮▮▮▮ on all SAM's Club net invoiced sales, as there is no current baseline business at SAM's, all sales at SAM's Club will be considered new incremental business.

Separately, BG shall be paid ▮▮▮▮▮▮ on all Hobby Lobby net invoiced sales.

KORONA shall pay the commissions by the 20th day of each month for all shipments paid for during the preceding calendar month.

Additionally, BG shall be paid a Retainer on Walmart Stores, Inc. business of ▮▮▮▮ annually (monthly installments of ▮▮▮▮▮▮

3.02 Sales Representative shall not be entitled to a reimbursement of expenses unless Sales Representative incurs extraordinary expenses, provides KORONA a written request in advance to incur such expenses, and receives a written authorization from KORONA stating that said expenses will be reimbursed.

**BG-WG-0129**

## ARTICLE 4.   TERM

4.01 This Agreement shall continue in full force for a period of three (3) years commencing from the date of this Agreement.   Notwithstanding, the foregoing this Agreement may also be terminated by either party giving written notice of its election to terminate at least thirty (30) days prior to the elected termination date.

## ARTICLE 5.   OPERATIONS

5.01 KORONA, at its own expense, shall furnish Sales Representative a reasonable supply of samples and advertising matter to be used by it in connection with its agency hereunder. Samples and advertising matter are the exclusive property of KORONA and, on termination of this Agreement, Sales Representative shall return them to KORONA at KORONA's expense.

5.02 KORONA shall have the absolute right to establish the prices, charges and terms governing the sale of the Products. In obtaining sales of the Products of KORONA, Representative shall quote only the prices and terms provided Sales Representative by KORONA and as may be revised from time-to-time.

5.03 Sales Representative shall forward all orders promptly to KORONA and each order shall be subject to KORONA's acceptance.  In all cases, rejections shall be given by written notice to the customer, with a copy to Sales Representative. Acceptance of an order shall be deemed to occur at the earlier of: (i) KORONA's written notice of acceptance to the customer, with a copy to Sales Representative; (ii) KORONA's rendering an invoice for the order; or, (iii) KORONA's failure to give written notice of rejection within sixty (60) days of KORONA's receipt of the order.

5.04 Sales Representative shall have full authority to employ such salesmen at such compensation and on such other conditions as it deems proper to sell the Products in the Territory.  The contract which Sales Representative makes with such salesmen shall contain a provision that the salesmen are the employees of Sales Representative and are to be paid by it alone and, that in employing the salesmen, Sales Representative is acting independently and not as an agent or attorney for KORONA.

3

**BG-WG-0130**

5.05 Sales Representative shall assume and pay all the costs of conducting the sales agency hereunder, including commissions or other compensation to salesmen in its employ.

5.06 KORONA shall furnish to each customer for whom Sales Representative receives an order which is accepted, KORONA's "Standard Warranty" covering the Products, as such warranty is established by KORONA from time-to-time. Said Standard Warranty shall contain a statement that no one is authorized to make any warranty or representation other than as set forth in the Standard Warranty, and the customer may not rely on any other warranty or representation. Sales Representative shall make no other representations or warranties to potential or actual customers.

5.07 Sales Representative shall use its best efforts to solicit orders in the Territory. Sales Representative shall have the right to promote, solicit orders for, sell and/or otherwise market goods, equipment, and/or services manufactured or supplied by persons or firms other than FLORA, provided that if such goods, equipment and/or services compete directly or indirectly with the sale of the Products, Sales Representative shall first obtain the written consent of KORONA.

5.08 Sales Representative is not an employee of KORONA for any purpose whatsoever but is an independent contractor. KORONA is interested only in the results obtained by Sales Representative, who shall have the sole control of its manner and means of performing under this Agreement. Sales Representative represents and warrants that Sales Representative has established and independent trade and occupation and does not engage in the manufacture or distribution of the Products.

5.09 Sales Representative shall abide by: a) all applicable federal, state and local law, rules and regulations, or the orders of any federal, state or local government properly exercising authority over the business operations of Sales Representative.

5.10 Sales Representative shall carry insurance in amounts and form as requested by KORONA from time-to-time.

5.11 During the term of this Agreement, Sales Representative may have access to various confidential information, including without limitation, proprietary information relating to the operations of KORONA, trade secrets, policies, procedures, operating manuals, specifications,

BG-WG-0131

software, forms, signs, notices, displays, marketing techniques, outreach materials, financial information, customer information and other information (collectively "confidential information"). During the term of this Agreement and at any time thereafter, Sales Representative shall maintain confidential and not misuse, misappropriate or disclose any of the confidential information disclosed to Sales Representative in connection with the performance of services hereunder, directly or indirectly, and to protect the confidentiality thereof, except as may be necessary for the discharge of Sales Representative's obligations hereunder or by law.

5.12 Sales Representative is responsible for paying, when due, all income taxes, including estimated taxes, incurred as a result of the compensation paid to Sales Representative. Sales Representative agrees to indemnify KORONA for any claims, costs, losses, or damages suffered by KORONA resulting from Sales Representative's failure to comply with this provision. Sales Representative agrees to hold harmless and indemnify KORONA from any and all claims arising out of any injury, disability or death of Sales Representative.

ARTICLE 6.   INTERPRETATION AND ENFORCEMENT

6.01 Any notice, request, demand or other communication required or permitted hereunder shall be deemed to be properly given when deposited in the United States mail, postage prepaid, or when deposited with a public telegraph company for transmittal, charges prepaid, addressed to the address set forth in the first paragraph above.

6.02 The validity, interpretation and performance of this Agreement shall be controlled by and construed under the laws of the Commonwealth of Virginia, and submit to the exclusive jurisdiction of the state court located in Pulaski County, Virginia or the U.S. District Court for the Western District of Virginia (Roanoke Division) in which this Agreement is being executed.

6.03 Sales Representative shall not assign this Agreement without the prior consent of KORONA, in writing.

6.04 If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

5

**BG-WG-0132**

6.05 If any action at law or in equity is brought to enforce or interpret this Agreement, the prevailing party shall be entitled to attorney's fees and costs.

6.06 This instrument contains all of the agreements, understandings, representations, conditions, warranties and covenants made between the parties hereto.  Unless set forth herein, neither party shall be liable for any representations made, and all modifications and amendments hereto must be in writing.

6.07 The headings in this Agreement are for convenience only and shall not in any way affect the interpretation or construction of the language of the provisions to which they refer.

6.08 Modifications and additions to this Agreement, including are only valid if in writing and duly signed by both parties.

6.09 This Agreement may be executed in multiple counterparts.

6.10 KORONA may freely assign this Agreement and any of its rights, duties, and/or obligations under this Agreement without the express written authority of Sales Representative.  Sales Representative may not assign this Agreement not any of its rights, duties, and/or obligations under this Agreement without the prior written consent of KORONA.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first written above.

"KORONA"                    KORONA CANDLE, INC.

By: _____  12/27/18
    Mark Cunningham
    Director of Sales, N. America

"Sales Representative"      _____
                           (Signature)

                           _____
                           (Name Printed)

6

**BG-WG-0133**

SCHEDULE A

Description of the Products

Potpourri
Wax Melts
All Candles Scented or Unscented
Incense
Ash Catchers
Sachets
All Dried Flower Products
Essential Oils
Warming Oils
Liquid Potpourri
Gift Sets
Ceramic Burners
Diffusers
Or any other future products agreed to by both parties

8

**BG-WG-0134**

SCHEDULE B

Key HQ Territory

(Walmart, SAM's Club in Bentonville, AR
Hobby Lobby in Oklahoma City, OK)

BG-WG-0135

SCHEDULE C

Customer

Walmart, SAM's Club and Hobby Lobby

**BG-WG-0136**